IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION |
| RENEE TARTAGLIONE, | NO. 15-0491 |
| Defendant. | |

**OPINION**

**Slomsky, J.**                                                                     **January 10, 2017**

**I.      INTRODUCTION**

On January 26, 2016, Defendant Renee Tartaglione was charged with various offenses stemming from her alleged involvement in a purported scheme to defraud the Government. (Doc. No. 3.)  It is alleged that Defendant defrauded the Government by charging excessive rent to Juniata Community Mental Health Clinic ("JCMHC" or "the Clinic").  It is also alleged that Defendant caused JCMHC to issue unjustified payments to herself by securing a position as President of its Board of Directors.

At trial, the Government seeks to present audio recordings from two sources: (1) phone calls placed by Defendant's husband, Carlos Matos, while Matos was incarcerated in federal prison (referred to as the "prison recordings"), and (2) conversations between Matos and a cooperating witness, Sandy Acosta (referred to as the "witness recording").  (Doc. No. 57 at 6.)  Defendant argues the recordings should be suppressed for several reasons.  (Doc. No. 72.)  She contends that the prison recordings are protected by spousal privileges and are irrelevant.  (Id. at 4-6.)  She also asserts that the witness recording cannot be admitted because it does not satisfy authentication and relevancy requirements, and is inadmissible hearsay.  (Id. at 7-8.)  For reasons

1

that follow, this Court will grant the Government's Motion (Doc. No. 57) and will permit the use of the recordings at trial.

## II.     BACKGROUND

In 2007, Defendant Renee Tartaglione became President of the Board of Directors of Juniata Community Mental Health Clinic ("JCMHC" or "the Clinic"), a Pennsylvania nonprofit corporation whose mission was to provide outpatient mental health services to residents in Northeast Philadelphia.  (Doc. No. 88 at 1.)  As a mental health clinic rendering services in an underserved community, JCMHC received Medicaid funding from the United States Government and the Commonwealth of Pennsylvania.

The Superseding Indictment alleges that from 2007 to 2013, Defendant "defrauded and stole from" JCMHC while serving as President of its Board of Directors.  (Doc. No. 61 at 2.)  As President, Defendant obtained signatory authority for JCMHC and allegedly began issuing checks for services and goods that the Clinic never received.  Defendant is charged with "directed hundreds of thousands of dollars in fraudulent payments from the Clinic to co-conspirators, who then delivered cash back to the defendant."  (Doc. No. 88 at 1.)

The Superseding Indictment also alleges that Defendant caused JCMHC to make "illegitimate payments" to herself or to her holding company, Norris Hancock LLC, in the form of excessive rent.  (Id.)  Defendant purchased two buildings in the name of the holding company Norris Hancock LLC.  The Clinic operated out of these buildings.  They are located at 2254-60 North 3rd Street and 2637-45 North 5th Street, respectively, in Philadelphia, Pennsylvania (referred to as the "3rd Street Building" and the "5th Street Building").  After the buildings were purchased, Defendant is alleged to have steadily increased the rent charged to JCMHC, essentially funneling excessive rent payments to her holding company.  Through the schemes

alleged, the Superseding Indictment charges that over a period of six years, Defendant stole more than $2,000,000 "from the non-profit's coffers."  (Doc. No. 88 at 1.)

On October 3, 2016, the Government filed a Motion to Admit Tape Recordings.  (Doc. No. 57.)  As noted, the Government seeks to present at trial two types of recordings: (1) prison recordings of phone calls between Defendant and her husband, Carlos Matos, made while Matos was incarcerated, and (2) conversations between Matos and a cooperating witness, Sandy Acosta. (Id. at 6.)   On October 31, 2016, Defendant filed a Response in Opposition to the Government's Motion.  (Doc. No. 72.)   On November 9, 2016, this Court held a hearing on all pre-trial motions.  During the hearing, the Court afforded the parties an opportunity to file supplemental briefing.  On December 5, 2016, the Government filed a Supplemental Memorandum in Support of its Motion to Admit Tape Recordings.  (Doc. No. 82.)  On January 4, 2017, this Court held a second hearing where pre-trial motions were argued.  This Motion is now ripe for review.

III.    STANDARD OF REVIEW

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  See Bradley v. Pittsburgh Bd. Of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990).  The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds.  Leonard v. Stemtech Health Sciences, Inc., 981 F.Supp.2d 273, 276 (D. Del. 2013).

A trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual context.  See Diehl v. Blaw-Knox, No. 01-0770, 2002 WL 34371510, at *1 (M.D. Pa. July 15, 2002).  Further, a trial court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer."  Luce v. United States, 469 U.S. 38, 41 (1984).

## IV.     ANALYSIS

The Government moves to admit certain recorded conversations relevant to proving its case.  (Doc. No. 57.)  Specifically, the Government seeks to admit approximately 122 recordings of prison phone calls between Defendant and her husband, made while he was incarcerated.[1]  (Id. at 6.)  In addition, the Government moves to admit recorded conversations between Matos and Acosta, a cooperating witness.  (Id.)

### A.     The Prison Recordings

Defendant objects to the use of the prison recordings on two grounds.  (Doc. No. 72 at 4-8.)  First, she asserts that the recordings are protected by spousal privileges.  (Id. at 4-6.)  Second, Defendant argues that the prison recordings are irrelevant and prejudicial.[2]  (Id. at 6-8.)

### 1.     Spousal Privileges Do Not Protect the Prison Recordings

Defendant first argues that the prison recordings must be suppressed because Defendant and her husband invoked spousal privileges.  (Id. at 4-6.)  Two spousal privileges arise out of the marital relationship: (1) the privilege that protects confidential marital communications, and (2) the privilege against adverse spousal testimony.  3 Weinstein's Federal Evidence § 505.03[1] (2d ed. 2016).   Defendant argues that both preclude the admission of the prison recordings.  (Doc. No. 72 at 4-6.)

---

[1] In its Trial Memorandum, the Government noted that it has "substantially reduced the number of tape recordings it plans to play during its case-in-chief, and has identified for the defense the small subset of tapes from which it plans to play brief and relevant portions of a call."  (Doc. No. 88 at 23-24, n. 11.)

[2] At the hearing held on January 4, 2017, the parties stipulated that the authentication requirements in Federal Rule of Evidence 901 and United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975), were satisfied with respect to the prison recordings.

### a.     The Confidential Marital Communications Privilege Does Not Protect the Prison Recordings

Defendant contends that the prison recordings should be suppressed by her invocation of the confidential marital communications privilege.  (Id.)  This privilege prohibits one spouse from testifying about the content of conversations or communications with the other spouse made in confidence during their marriage.  3 Weinstein's Federal Evidence § 505.09 (2d ed. 2016).  This privilege is held by both spouses, including the nontestifying spouse, and can be asserted even after the marriage ends.  Id.  A defendant who wishes to invoke the confidential marital communications privilege must show that: (1) a valid marriage existed at the time of the communication, (2) the privilege is being applied "only to utterances or expressions intended by one spouse to convey a message to the other," and (3) the communication was made in confidence.  Wolfle v. United States, 291 U.S. 7, 14 (1934).  The party asserting the marital communications privilege bears the burden of establishing all three elements.

Here, the Government concedes that the first two elements of the confidential marital communications privilege are satisfied.  The Government argues, however, that Defendant has failed to satisfy the final element—"that the communication must have been made in confidence."  In this regard, the law is clear that, where one spouse is imprisoned, communications between the married couple on prison telephones are not made in confidence. See United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998) ("Thus, because the marital communications privilege protects only communications made in confidence, under the usual circumstances where the spouse seeking to invoke the communications privilege knows that the other spouse is incarcerated, and bearing in mind the well-known need for correctional institutions to monitor inmate conversations, we agree with the district court that any privilege [the couple] might ordinarily have enjoyed did not apply."); see also Watson v. Albin, No. 06-

7767, 2008 WL 2079967, at *2-4 (N.D. Cal. May 12, 2008) (rejecting the defendant's argument that the marital communications privilege applies to phone calls from prison phones because the couple had no other means of communicating).  "The presence of a prison recording device [is] the functional equivalent of the presence of a third party."  United States v. Hatcher, 323 F.3d 666, 674 (8th Cir. 2003).  The Third Circuit has agreed with this principle.  See United States v. Barlow, 307 F. App'x 678, 681 (3d Cir. 2009) (finding that an incarcerated defendant's phone conversations with his wife were not privileged).

Thus, the phone calls between Defendant and her husband are not protected under the confidential marital communications privilege because they were not made in confidence.  The presence of a device monitoring and recording all phone calls made in prison is the functional equivalent of a third party listening to the conversations.  Hatcher, 323 F.3d at 674.  Therefore, the phone calls are not protected from use by the marital communications privilege.[3]

---

[3] At the hearing, the Government also argued that the prison recordings would be admissible under the crime-fraud exception.  Even if the conversations were made in confidence, there is an exception to the confidential marital communications privilege that would not protect these conversations—the crime-fraud exception.  See United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983) ("We join other circuits in holding that communications between spouses pertaining to ongoing or future criminal activity are not protected against disclosure by the privilege for confidential marital communications.").  Under the crime-fraud exception, conversations between spouses that would otherwise be protected from disclosure are admissible when the conversations were "in furtherance of a crime or fraud in which the speaker was a knowing participant . . . or where the husband and wife are joint participants in criminal activity whether or not each spouse is prosecuted."  Andrews v. Holloway, 256 F.R.D. 136, 147 (D.N.J. 2009) (citing United States v. Hill, 967 F.2d 902 (3d Cir. 1992)).  Although the Government argued that the prison recordings would be admissible under the crime-fraud exception, the Court would need more information about the contents of the phone calls to make a determination on whether this exception would permit the prison recordings to be presented at trial.  Moreover, the Government has stated it would only play portions of the conversations to protect the confidentiality of the spousal conversations that do not relate to the offenses charged.

       **b.**      **The Privilege Against Spousal Adverse Testimony Does Not Protect the Prison Recordings**

Defendant also contends that the privilege against adverse spousal testimony prevents the Government from using the prison recordings at trial.  (Doc. No. 72 at 5.)

The privilege against adverse spousal testimony allows a witness-spouse to refuse to testify against a defendant-spouse in a criminal proceeding.  3 <u>Weinstein's Federal Evidence</u> § 505.05[1] (2d ed. 2016).  "The witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled nor foreclosed from testifying."  <u>United States v. Trammel</u>, 445 U.S. 40, 53 (1980).  This privilege sweeps more broadly than the confidential marital communications privilege because it protects testimony on any subject from disclosure, including nonconfidential matters and matters that occurred prior to marriage.  <u>Id.</u> at 50-51.  It protects testimonial evidence that is adverse to the defendant-spouse.  <u>But see</u> <u>United States v. Thomann</u>, 609 F.2d 560, 564 (1st Cir. 1979) (holding that a fingerprint was nontestimonial evidence and was not protected by the privilege against adverse spousal testimony).  Because the privilege rests with the witness-spouse, that spouse alone has the power to waive the privilege, with or without the consent of the defendant-spouse.  <u>Trammel</u>, 445 U.S. at 53.  Waiver ordinarily occurs when the witness-spouse voluntarily and knowingly elects to testify against the defendant-spouse.  <u>See</u> <u>Appeal of Malfitano</u>, 633 F.2d 276, 280 (3d Cir. 1980) (finding that a wife did not knowingly waive her privilege against adverse spousal testimony when answering a judge's questions because "she thought she had to answer the judge and that answering would not affect her right to continue to refuse to testify before the grand jury.").

Defendant's husband, Carlos Matos, has invoked the privilege against spousal adverse testimony to suppress the prison recordings.  Matos contends that the phone calls cannot be used against his wife at trial because using the phone calls will be the equivalent of forcing Matos to

testify against her.  The Government argues to the contrary that Matos cannot successfully invoke the adverse spousal privilege for two reasons.

First and most convincingly, the Government argues that the transcripts of the prison recordings are admissible because Matos is not being compelled to testify as a witness against his wife.  (Doc. No. 82 at 5.)  Specifically, the Government asserts that "[t]he introduction of taped statements is not compulsion of testimony."  (Id.)  In United States v. Geller, the trial court rejected the argument that the defendants' tape-recorded conversations had "the same practical and legal effect as being forced to testify in court against those same persons."  560 F. Supp. 1309, 1326 (E.D. Pa. 1983).  In Geller, the court explained that "the offer of voluntarily spoken taped remarks between either married defendant and third parties does not amount to spousal 'testimony' and offends no privilege . . . ."  Id.  In addition, in United States v. Clark, the court rejected the defendants' assertion that "the introduction at trial of tapes of conversations between spouses is the same as compelling one spouse to testify against another."[4]  651 F. Supp. 76, 82

---

[4] In Clark, the court explained as follows:

> As to the first aspect of the privilege, defendants claim that the introduction at trial of the tapes of conversation between spouses is the same as compelling one spouse to testify against another.  The only case to which defendants refer in support of that proposition is *Hunter v. Hunter,* 83 A.2d 401 (Pa. 1951).  In *Hunter*, the Pennsylvania Superior Court held that surreptitiously recorded conversations between a husband and his wife would not be admitted as evidence in a divorce proceeding because the conversations which were recorded were confidential.  The Superior Court did not find that admission of the tapes would be the same as compelling one spouse to testify against the other.  Rather, the basis of the holding was the second aspect of the husband-wife privilege, which forbids disclosure of confidential communications.  Thus, Hunter is inapposite here.  *See*, *United States v. Geller*, 560 F. Supp. 1309, 1326 (E.D. Pa.1983), *aff'd*, 745 F.2d 49 (3d Cir. 1984), *cert. denied*, 469 U.S. 1109 (1985).

> Defendants do not cite any other cases in support of their position.  Additionally, it is the opinion of this court that the tape recordings at issue are evidentiary,

(M.D. Pa. 1986).  Therefore, Matos cannot successfully invoke the privilege against spousal adverse testimony because he is not being compelled to testify against his wife.

Second, the Government asserts that Matos cannot claim the privilege against spousal adverse testimony because he has waived this right by consenting to the prison recording his phone calls.  Defendant submits in opposition that Matos did not knowingly waive this privilege when he consented to the recording of his prison phone calls.  In addition, Defendant notes that, even if this consent to record constituted a waiver, Matos has the right to revoke the earlier waiver and refuse to testify at trial.[5]

A waiver must be knowing and voluntary.  Appeal of Malfitano, 633 F.2d 276, 280 (3d Cir. 1980).  In other words, the witness spouse must voluntarily decide to relinquish the privilege not to testify.  Trammel v. United States, 445 U.S. 40, 42 (1980).

Here, Matos signed a consent form, allowing the prison to record his phone calls.  The consent notice provided as follows:

> The Bureau of Prisons reserves the authority to monitor (this includes recording) conversations on any telephone located within its institutions, said monitoring to be done to preserve the security and orderly management of the institution to protect the public.  An inmate's use of institutional telephones constitutes consent to this monitoring.  A properly placed phone call to an attorney is not monitored. You must contact your unit to request an unmonitored attorney call.
>
> I have read or has read to me (cross out one) the above notification on the monitoring of inmate telephone calls.  I understand that telephone calls I make from institution telephone may be monitored and recorded.

---

rather than testimonial, in nature.  Therefore, the court finds that their introduction will not constitute the compulsion of a witness to testify against his or her spouse.

651 F. Supp. 76, 82 (M.D. Pa. 1986).

[5] See 3 Weinstein's Federal Evidence § 505.08[6] (2d ed. 2016) (explaining that it is unclear whether "a prior waiver of this privilege may be withdrawn at trial.").

(Exhibit, Prison Consent Form, at 3.)  Matos signed the consent form with the understanding that his phone calls made in the prison would be recorded.  This included the calls from his wife, Defendant Renee Tartaglione.  In addition, Matos read and understood that the Bureau of Prisons recorded phone calls "to protect the public."  (Id.)  The Bureau of Prisons' notice that recording phone calls is done "to protect the public" has broader implications than the immediate safety of inmates.  It encompasses the entire public, and would include the prevention of ongoing or future crimes occurring outside prison walls. Therefore, under this theory too, Matos has waived his right to assert the privilege against adverse spousal testimony.  Neither spousal privilege will prevent the use of the prison recordings at trial.

### 2. The Prison Recordings Will Not Be Precluded on the Basis of Relevancy or Prejudice at This Point

Defendant's second argument is that the use of the prison recordings is barred under the provisions of the Federal Rules of Evidence because these conversations are irrelevant and prejudicial.  Under the Federal Rules of Evidence, only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if:

> (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and

> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.  A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, Defendant contends that the prison recordings are irrelevant, and that, even if some of the conversations are relevant, the recordings are unfairly prejudicial.  (Doc. No. 72 at 5.)  The

Government has agreed that it will not play the 122 prison recordings in their entirety, but rather will play only those portions of the recordings that are relevant to proving its case. To preclude evidence in a motion in limine, the evidence must be clearly inadmissible on all potential grounds. Defendant has not shown that the relevant portions of the prison recordings which may be played at trial are prejudicial. Therefore, the prison recordings will not be precluded on the basis of Rule 403 at this time. At trial, Defendant may raise this objection again if it is deemed necessary.

### B.     The Witness Recording

The Government also moves to admit the December 12, 2012 recording of conversations between Sandy Acosta, Carlos Matos, and other persons. (Doc. No. 57 at 6.) Sandy Acosta is a cooperating witness who agreed to wear a recording device to capture these conversations. (Id.)

Defendant objects to the use of this recording for three reasons. (Doc. No. 72 at 7-8.) First, Defendant contends that the Government failed to show that the witness recording satisfies the Starks requirements for authentication. (Id. at 7.) Second, Defendant argues that the witness recording should be barred under Federal Rule of Evidence 403. (Id.) Third, Defendant objects to the admission of the witness recording because the statements are inadmissible hearsay. (Id. at 7-8.)

Defendant first contends that the Government has failed to show that the witness recording satisfies the Starks requirements for authentication. (Id. at 7.) To admit a tape recording, the Government has the burden of producing "clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975). The following factors are generally relevant considerations:

(1) That the recording device was capable of accurately recording the conversations offered in evidence;

(2) That the operator of the device was competent to operate the device;

(3) That the recordings are authentic and correct;

(4) That the recordings have not been altered;

(5) That the recordings have been preserved in an appropriate manner;

(6) That the speakers are accurately identified;

(7) That the conversations elicited were made voluntarily and in good faith, without inducement of any kind.

Id. at 121, n.11.  In addition, Federal Rule of Evidence 901 provides that the Government must authenticate a recording by producing "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

Here, Defendant contends that the witness recording does not satisfy the authentication requirements in Starks because the recording is unintelligible, incomplete, and in Spanish.  (Doc. No. 72 at 7.)  The Government has translated portions of the recording from Spanish to English and transcribed the recording for the Court.  In the absence of a stipulation by the parties, the Government must satisfy the Starks requirements prior to using the witness recording at trial. Therefore, at this stage, the witness recording will not be precluded.

Defendant's second objection to introducing this recording is that the recording is largely unintelligible, incomplete, irrelevant, and in Spanish.  (Doc. No. 72 at 7.)  She contends that the conversations should be barred under Rule 403 of the Federal Rules of Evidence.  (Id.)  Under Federal Rule of Evidence 403, the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403. Defendant contends that the intelligible parts of the conversations will be taken out-of-context, and will both confuse the jury and be prejudicial. (Doc. No. 72 at 7.) After reading the transcript of the recorded conversation, it appears that the recorded conversation would not be prejudicial. The transcript of the recording contains enough of the conversation in pertinent places to make the recording intelligible, and if Defendant feels otherwise, an appropriate objection for the Court's consideration can be raised at trial. Therefore, the recording will not be precluded on the basis of Rule 403.

Defendant's third objection to the use of this recording is that it constitutes inadmissible hearsay. (Id. at 7-8.) Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein. Hearsay is generally inadmissible, unless an exception or exclusion allows its admission. Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement offered against an opposing party and "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). Rather, it is an exception to the hearsay definition. To be admissible under Rule 801(d)(2)(E), a statement also must be made during the conspiracy, that is, while the conspiracy is in progress. 5 Weinstein's Federal Evidence § 801.34[4][a] (2d ed. 2016). Statements made after the crime has been completed do not qualify. Id. A statement must also have been made "in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The "in furtherance" requirement allows the admission of statements that "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." 5 Weinstein's Federal Evidence § 801.34[5] (2d ed. 2016). The Third Circuit has broadly interpreted the "in furtherance" requirement. United States v. Duka, 671 F.3d 329, 348 (3d Cir. 2011). For example, a statement can be in furtherance of a conspiracy even if uttered by

13

an outsider, if the statement is designed to help the co-conspirators achieve their goal. 5 Weinstein's Federal Evidence § 801.34[5] (2d ed. 2016). "Statements are generally admitted if they involve transactions within the conspiracy, discuss past events with other members, or simply keep other members up to date." Id. (citing United States v. Weaver, 507 F.3d 178, 186-87 (3d Cir. 2007)).

Here, Defendant argues that the utterances in the witness recording were not made during and in furtherance of the conspiracy. (Doc. No. 72 at 8.) The Government asserts that the alleged criminal conduct continued until at least December 2012, therefore, the conversation recorded on December 12, 2012 occurred during the alleged conspiracy. (See Doc. No. 3 at ¶ 14-15.) The Government also argues that conversations pertaining to the accountant, checks, and tax returns were made in furtherance of the conspiracy to defraud the Government and to shelter money from tax liability. Although these issues are best dealt with at trial, as a preliminary matter, it does not appear that the 2012 recording should be barred for failing to meet the requirements of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Therefore, the witness recording will not be precluded on the basis that it is inadmissible hearsay at this stage of the litigation.

## V.  CONCLUSION

For the foregoing reasons, the Government's Motion to Admit Tape Recordings (Doc. No. 57) will be granted. An appropriate Order follows.