IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RENEE TARTAGLIONE,<br><br>        Defendant. | CRIMINAL ACTION<br>NO. 15-0491 |

**OPINION**

**Slomsky, J.**                                                                                           **January 10, 2017**

## I.    INTRODUCTION

On January 26, 2016, the Government filed a fifty-three count Superseding Indictment charging Defendant Renee Tartaglione with various offenses, including Theft from a Health Care Benefit Program, in violation of 18 U.S.C. § 669 (Counts 12-37), Theft from a Program Receiving Federal Funds in Excess of $10,000, in violation of 18 U.S.C. § 666 (Counts 38-49), Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1349 (Counts 2-13), and Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1349 (Counts 14-25).  (Doc. No. 3.)  Defendant argues that certain offenses are multiplicitous which, under the Double Jeopardy Clause of the United States Constitution, would prevent the Government from prosecuting these offenses in the same trial. (Doc. No. 59.)

Pursuant to her multiplicity argument, Defendant requests that the Court order the Government to proceed to trial against her only on the Counts charging the offense of Theft from a Health Care Benefit Program, in violation of 18 U.S.C. § 669, and to dismiss, with prejudice, the Counts with the following charged offenses: Theft from a Program Receiving Federal Funds in Excess of $10,000, in violation of 18 U.S.C. § 666 (Counts 38-49), Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1349 (Counts 2-13), and Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1349

1

(Counts 14-25).  (Doc. Nos. 84, 86.)  For reasons that follow, the Court will deny Defendant's Motion (Doc. No. 59).

## II.     BACKGROUND

In 2007, Defendant Renee Tartaglione became President of the Board of Directors of Juniata Community Mental Health Clinic ("JCMHC" or "the Clinic"), a Pennsylvania nonprofit corporation whose mission is to provide outpatient mental health services to residents in Northeast Philadelphia.  (Doc. No. 88 at 1.)  As a mental health clinic rendering services in an underserved community, JCMHC received Medicaid funding from the United States Government and the Commonwealth of Pennsylvania.

The Superseding Indictment alleges that from 2007 to 2013, Defendant "defrauded and stole from" JCMHC while serving as President of its Board of Directors.  (Doc. No. 3; Doc. No. 61 at 2.)  As President, Defendant obtained signatory authority for JCMHC and allegedly began issuing checks for services and goods that the Clinic never received.  Defendant is charged with "direct[ing] hundreds of thousands of dollars in fraudulent payments from the Clinic to co-conspirators, who then delivered cash back to the defendant."  (Doc. No. 88 at 1.)

The Superseding Indictment also alleges that Defendant caused JCMHC to make "illegitimate payments" to herself or to her holding company, Norris Hancock LLC, in the form of excessive rent.  (Id.)  Defendant purchased two buildings in the name of the holding company Norris Hancock LLC.  The Clinic operated out of these buildings.  They are located at 2254-60 North 3rd Street and 2637-45 North 5th Street, respectively, in Philadelphia, Pennsylvania (referred to as the "3rd Street Building" and the "5th Street Building").  After the buildings were purchased, Defendant is alleged to have steadily increased the rent charged to JCMHC, essentially funneling excessive rent payments to her holding company.  Through the schemes

alleged, the Superseding Indictment charges that over a period of six years, Defendant stole more than $2,000,000 "from the non-profit's [JCMHC's] coffers." (Doc. No. 88 at 1.)

Defendant argues that four charged offenses are multiplicitous: (1) Theft from a Health Care Benefit Program, (2) Theft from a Program Receiving Federal Funds in Excess of $10,000, (3) Mail Fraud, and (4) Wire Fraud. (Doc. No. 59 at 3-4; Doc. No. 86 at 1-2.) Because the Court concludes that the offenses are not multiplicitous, the Motion to Dismiss (Doc. No. 59) will be denied.

## III.    ANALYSIS

Defendant Renee Tartaglione is charged with the following crimes which she contends are multiplicitous:

- Mail Fraud, in violation of 18 U.S.C. § 1341 and § 1349 (Counts 2-13);

- Wire Fraud, in violation of 18 U.S.C. § 1343 and § 1349 (Counts 14-25);

- Theft from a Health Care Benefit Program, in violation of 18 U.S.C. § 669 (Counts 26-37); and

- Theft from a Program Receiving Federal Funds in Excess of $10,000, in violation of 18 U.S.C. § 666 (Counts 38-49).

(Doc. Nos. 59, 86.) Defendant argues that "the Counts alleging violations of 18 U.S.C. § 669 (Counts 26-37) and 18 U.S.C. § 666 (Counts 38-49) not only duplicate each other but also are further duplicated in either the Mail Fraud Counts (Counts 2-13) or the Wire Fraud Counts (Counts 14-25)." (Doc. No. 86 at 1.) She asserts that the Government must elect, prior to trial, on which Counts it will choose to proceed because the "sets of Counts rely on identical proofs and are multiplicitous." (Doc. No. 59 at 3.) Because these offenses rely on proof of the same underlying conduct—a series of checks Defendant allegedly caused to be issued from the Clinic

on the same dates, in the same amounts, and to the same payees—Defendant contends that these

charges are multiplicitous and that an election is required.  (Id.)  Defendant also contends that the

Counts on which the Government does not proceed at trial should be dismissed.  (Id.)

Multiplicity is the charging of the same offense in two or more counts of an indictment.

United States v. Kennedy, 682 F.3d 244, 254-55 (3d Cir. 2012).  A multiplicitous indictment

"may lead to multiple sentences for a single violation."  United States v. Carter, 576 F.2d 1061,

1064 (3d Cir. 1978).  Multiple sentences for a single violation are prohibited by the Double

Jeopardy Clause.  United States v. Stanfa, 685 F.2d 85, 87 (3d Cir. 1982) (citing North Carolina

v. Pearce, 395 U.S. 711, 717 (1969)).  The purpose of the constitutional protection against

duplicative punishment is "to ensure that the sentencing discretion of the courts is confined to the

limits established by the legislature."  Kennedy, 682 F.3d at 255.  "Thus, the question of what

punishments are constitutionally permissible is not different from the question of what

punishments the Legislative Branch intended to be imposed.  When Congress intended . . . to

impose multiple punishments, imposition of such sentences does not violate the Constitution."

Albernaz v. United States, 450 U.S. 333, 344 (1981).  When legislative intent is unclear, courts

apply the test articulated in Blockburger v. United States, 284 U.S. 299 (1932).

Here, Defendant alleges that the legislative history of 18 U.S.C. § 669, Theft from a

Health Care Benefit Program, indicates that this statute alone should be used to prosecute health

care fraud.  (Doc. No. 84 at 1-3.)  For this reason, Defendant asserts that the offense of Theft

from a Program Receiving Federal Funds in Excess of $10,000 under 18 U.S.C. § 666, and the

offenses of Mail and Wire Fraud under 18 U.S.C. § 1341 and § 1343, should be dismissed.  (Id.)

According to the legislative history of 18 U.S.C. § 669, which establishes the offense of Theft

from a Health Care Benefit Program, Congress sought to provide a clear and definitive means by

which to prosecute health care fraud.  (Doc. No. 84, Ex. A., H.R. Rep. No. 104-747, 104th Cong., 2nd Sess. (Aug. 2, 1996).)  The House Report states that "[c]urrent Federal enforcement tools are inefficient and inadequate against increasingly sophisticated patterns of fraud and abuse.  Health care fraud cases, prosecuted mainly under mail and wire fraud statutes, money laundering and false claims laws, are complex, costly and time-consuming."  (Id.)  Congress passed 18 U.S.C. § 669 to provide a "stronger and more direct statutory authority to deter fraud and abuse against public and private health plans."  (Id.)

Nowhere in the House Report, however, does Congress state that this criminal statute was meant to supersede or replace the use of existing criminal statutes to combat health care fraud. Consequently, the legislative history is unclear as to whether Congress sought in health care fraud cases to eliminate the use of 18 U.S.C. § 666, 18 U.S.C. § 1341, or 18 U.S.C. § 1343, in conjunction with 18 U.S.C. § 669 in the same prosecution.  Because the legislative history is unclear, the Blockburger test must be used to determine if these offenses are multiplicitous.  284 U.S. 299, 304 (1932).

In Blockburger, the Court stated that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  Id.  Under the Blockburger test, a trial court looks to the statutory elements of the crimes charged to determine if there is any overlap.  United States v. Chorin, 322 F.3d 274 (3d Cir. 2003).  As the Supreme Court has explained,

> The test articulated in Blockburger v. United States, 284 U.S. 299 (1932), serves [the] function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. . . . [T]he Court's application of the test focuses on the statutory elements of the offense.  If each requires proof of a fact that the other does not, the Blockburger test is

satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

Iannelli v. United States, 420 U.S. 770, 787, n.17 (1975).  A trial court, therefore, must compare the elements of each charged offense to determine if each one requires proof of a fact that the other does not.  If so, the Blockburger test is satisfied, and the charged offenses are not multiplicitous.

To prove Theft from a Health Care Benefit Program in violation of 18 U.S.C. § 669 (Counts 26-37), the Government must establish the following elements: (1) the defendant embezzled, stole, converted, or intentionally misapplied assets; (2) the assets belonged to an organization that qualifies as a "health care benefit program," as that term is defined in 18 U.S.C. § 24(b); (3) the defendant acted knowingly and willfully; and (4) the amount the defendant embezzled, stole, converted, or intentionally misapplied was greater than $100.[1]  See United

---

[1] 18 U.S.C. § 669 provides:

> (a) Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both; but if the value of such property does not exceed the sum of $100 the defendant shall be fined under this title or imprisoned not more than one year, or both.

> (b) As used in this section, the term "health care benefit program" has the meaning given such term in section 24(b) of this title.

18 U.S.C. § 669.  A "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."  18 U.S.C. § 24(b).  In United States v. Whited, the Third Circuit explained that Congress enacted Section 669 to criminalize theft from a health care benefit program which "affect[s] commerce."  311 F.3d 259, 268 (3d Cir. 2002).  There, the Third Circuit explained that Congress intended the phrase "affecting commerce" to necessarily mean affecting interstate commerce, or regulating activities that are substantially related to interstate commerce, so that creating the statute was

States v. Whited, 311 F.3d 259, 261 (3d Cir. 2002) (explaining the elements of Theft from a Health Care Benefit Program); see also 1-24 Modern Federal Jury Instructions—Criminal ¶ 24.18 (2016) (listing the elements of Theft from a Health Care Benefit Program).

To prove Theft from a Program Receiving Federal Funds in Excess of $10,000 in violation of 18 U.S.C. § 666 (Counts 38-49), the Government must establish the following elements: (1) at the time alleged in the indictment, the defendant was an agent of the organization receiving federal funds; (2) in a one-year period, the organization received federal funds in excess of $10,000; (3) the defendant embezzled, stole, knowingly converted or intentionally misapplied the property, or obtained it by fraud; (4) the property was owned by or in the care, custody, or control of the organization; and (5) the value of the property was at least $5,000.[2]

---

within its constitutional authority under the Commerce Clause of the United States Constitution. Id.

[2] 18 U.S.C. § 666 provides:

(a) Whoever, if the circumstance described in subsection (b) of this section exists-

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(d) As used in this section—

(1) the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative;

(2) the term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program;

(3) the term "local" means of or pertaining to a political subdivision within a State;

(4) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(5) the term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

18 U.S.C. § 666.

See United States v. Riley, 621 F.3d 312, 329 (3d Cir. 2010) (listing the elements of 18 U.S.C. §

666 as applied to a defendant who was alleged to have received federal funds in connection with

the fraudulent sale of city-owned real estate); see also Third Circuit Model Jury Instructions—

Criminal No.6.18.666A1A (Jan. 2014) (listing the elements of Theft from a Program Receiving

Federal Funds in Excess of $10,000).

To prove Mail Fraud in violation of 18 U.S.C. § 1341 (Counts 2-13), the Government

must prove the following elements beyond a reasonable doubt: (1) the defendant knowingly

devised a scheme to defraud or obtain money or property by materially false or fraudulent

purposes, representations or promises; (2) the defendant acted with the intent to defraud; and (3)

in advancing, furthering, or carrying out the scheme, the defendant used the mails, or caused the

mails to be used.[3]   See United States v. Yusuf, 536 F.3d 178, 186-87 (3d Cir. 2008) (identifying

---

[3] 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, or to sell, dispose of, loan, exchange, alter, give
> away, distribute, supply, or furnish or procure for unlawful use any counterfeit or
> spurious coin, obligation, security, or other article, or anything represented to be
> or intimated or held out to be such counterfeit or spurious article, for the purpose
> of executing such scheme or artifice or attempting so to do, places in any post
> office or authorized depository for mail matter, any matter or thing whatever to be
> sent or delivered by the Postal Service, or deposits or causes to be deposited any
> matter or thing whatever to be sent or delivered by any private or commercial
> interstate carrier, or takes or receives therefrom, any such matter or thing, or
> knowingly causes to be delivered by mail or such carrier according to the
> direction thereon, or at the place at which it is directed to be delivered by the
> person to whom it is addressed, any such matter or thing, shall be fined under this
> title or imprisoned not more than 20 years, or both. If the violation occurs in
> relation to, or involving any benefit authorized, transported, transmitted,
> transferred, disbursed, or paid in connection with, a presidentially declared major
> disaster or emergency (as those terms are defined in section 102 of the Robert T.
> Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or
> affects a financial institution, such person shall be fined not more than $1,000,000
> or imprisoned not more than 30 years, or both.

the elements of mail fraud); see also Third Circuit Model Jury Instructions—Criminal

No.6.18.1341 (Jan. 2014) (listing the elements of mail fraud).

To prove Wire Fraud in violation of 18 U.S.C. § 1343 (Counts 14-25), the Government

must prove the following elements beyond a reasonable doubt: (1) the defendant's knowing and

willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and

(3) the use of interstate wire communications in furtherance of the scheme.[4]  See United States v.

Andrews, 681 F.3d 509, 518 (3d Cir. 2012) (setting forth the elements of wire fraud); see also

---

18 U.S.C. § 1341.

[4] 18 U.S.C. § 1343 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be fined under this title or imprisoned not more than 20
> years, or both. If the violation occurs in relation to, or involving any benefit
> authorized, transported, transmitted, transferred, disbursed, or paid in connection
> with, a presidentially declared major disaster or emergency (as those terms are
> defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency
> Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or
> both.

18 U.S.C. § 1343.  In addition, the Superseding Indictment alleges that Defendant Renee
Tartaglione violated 18 U.S.C. § 1349 when she conspired with others to commit mail fraud,
wire fraud, and violations of 18 U.S.C. § 666 and § 669.  (Doc. No. 3.)  The conspiracy statute
provides:

> Any person who attempts or conspires to commit any offense under this chapter
> shall be subject to the same penalties as those prescribed for the offense, the
> commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1349.  The crime of conspiracy is a separate offense and the defense does not
contend that it is multiplicitous.

Third Circuit Model Jury Instructions—Criminal No.6.18.1343 (Jan. 2014) (listing the elements of wire fraud).

Each offense requires the Government to prove an element that the other does not. First, the offense of Theft from a Health Care Benefit Program requires the Government to prove that the program fit within the definition of a "health care benefit program" under 18 U.S.C. § 24(b). This means that the Government must prove that Juniata Community Mental Health Clinic ("JCMHC" or "the Clinic") provided a medical benefit or service to individuals under a "public plan or private contract." 18 U.S.C. § 24(b). Second, it requires proving that JCMHC affected interstate commerce. Id. These elements of proof, which are necessary to prove Theft from a Health Care Benefit Program (18 U.S.C. § 669) are missing from the elements of Theft from a Program Receiving Federal Funds in Excess of $10,000 (18 U.S.C. § 666), Mail Fraud (18 U.S.C. § 1341), and Wire Fraud (18 U.S.C. § 1343).

The offense of Theft from a Program Receiving Federal Funds in Excess of $10,000 requires the Government to prove that JCMHC received more than $10,000 in federal funds during a one-year period. 18 U.S.C. § 666. This offense also requires the Government to prove that Defendant was an agent of JCMHC, the organization receiving federal funds, at the time of the alleged theft. Id. Moreover, the value of the property embezzled, stolen, knowingly converted or obtained by fraud has to be at least $5,000. Id. Thus, elements necessary to establish Theft from a Program Receiving Federal Funds in Excess of $10,000 are missing from the offense of Theft from a Health Care Program (18 U.S.C. § 669), Mail Fraud (18 U.S.C. § 1341), and Wire Fraud (18 U.S.C. § 1343).

Mail Fraud requires proof that Defendant used the mails in furtherance of a scheme to defraud the Government. 18 U.S.C. § 1341. Wire Fraud requires proof that Defendant used

interstate wire communications in furtherance of a scheme to defraud the Government. 18 U.S.C. § 1343. These two offenses each require proof of elements which are not present in the Section 669 and Section 666 charged offenses—that is, use of the mails, or use of interstate wire communications, and a scheme to defraud the Government. Because mail and wire fraud require the proof of different elements, that is, use of the mails and use of interstate wire communications in furtherance of the scheme, they too have different elements.

As demonstrated above, each offense requires proof of an element or fact that the other does not. Therefore, under Blockburger, these alleged offenses are not multiplicitous, and the Government will not be required to elect on which offense it will proceed to trial. The violations alleged in the Superseding Indictment may be tried together and none will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Multiplicitous Counts of the Superseding Indictment (Doc. No. 59) will be denied. An appropriate Order follows.