IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RENEE TARTAGLIONE,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 15-491 |

**OPINION**

**Slomsky, J.**                                                                                       **July 9, 2020**

## I.     INTRODUCTION

Defendant Renee Tartaglione, who is serving an 82 month term of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Defendant seeks a sentence modification to time served asserting that the COVID-19 pandemic, her age, and her medical condition place her at an increased risk of harm from the virus and, considered together, they amount to extraordinary and compelling circumstances justifying her release.  The Government opposes Defendant's Motion, citing jurisdictional flaws, numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities, and the lack of a COVID-19 risk factor in Defendant's medical records.  For reasons that follow, Defendant's Motion will be denied.

## II.    BACKGROUND

On June 23, 2017, after a five-week trial, a jury found Defendant Renee Tartaglione guilty on all counts of a fifty-three count Superseding Indictment ("Indictment").  The Indictment charged Defendant with the following offenses:

1

- Conspiracy to Commit Mail Fraud, Wire Fraud, Theft from a Health Care Benefit Program, and Theft from a Program Receiving Federal Funds in Excess of $10,000, in violation of 18 U.S.C. § 371 (Count 1);

- Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 1349 (Counts 2-13);

- Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1349 (Counts 14-25);

- Theft from a Health Care Benefit Program, in violation of 18 U.S.C. § 669 (Counts 26-37);

- Theft from a Program Receiving Federal Funds in Excess of $10,000, in violation of 18 U.S.C. § 666 (Counts 38-49); and

- Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1) (Counts 50-53).

The offenses stem from Defendant's conduct in charging excessive rent to Juniata Community Mental Health Clinic ("JCMHC") and in causing JCMHC to issue unjustified payments to her, all accomplished through her position as President of its Board of Directors. On July 12, 2018, Defendant was sentenced to 82 months incarceration, three years supervised release, and to pay restitution of $2,338,691 and a special assessment of $5,300.[1]  (Doc. Nos. 235, 242.) On August 28, 2018, Defendant began serving her sentence at the Federal Correctional Institution ("FCI") at Danbury, Connecticut. (Doc. No. 324 at 4.)

On July 25, 2018, Defendant appealed her conviction and sentence to the United States Court of Appeals for the Third Circuit. (Doc. Nos. 239, 249.)  The Third Circuit affirmed her conviction and modified the restitution part of her sentence in an Opinion and Judgment dated

---

[1] At sentencing, the Court departed downward from the United States Sentencing Guideline's range of imprisonment of 87-108 months, which was the final range determined by the Court. (PSR at 31.)  Moreover, on appeal, the Third Circuit Court of Appeals reduced the restitution by $6,113.  United States v. Tartaglione, Nos. 18-2638 & 18-3017, 2020 U.S. App. LEXIS 18058 (3d Cir. June 9, 2020).

June 9, 2020.  See United States v. Tartaglione, Nos. 18-2638 & 18-3017, 2020 U.S. App. LEXIS 18058 (3d Cir. June 9, 2020).  Defendant sought an extension of time to file a petition for rehearing, which was granted by the Third Circuit.  See United States v. Tartaglione, Nos. 18-2638 & 18-3017, Dkt. 113 (3d Cir. June 16, 2020).  Her appeal remains pending.  Defendant has until August 7, 2020 to file her petition for rehearing.  (Id.)

On March 26, 2020, Defendant asked the Warden of FCI Danbury to file a motion for compassionate release on her behalf.  (Doc. No. 324 at 4.)  It is unclear if the Warden responded to Defendant's request, but in any event, it is evident that if a response was received, the result was not in Defendant's favor.  (See id. at 4-5.)

On May 19, 2020, Defendant filed the instant Motion for Compassionate Release.  (See id.)  Defendant "submits that [her circumstance] is the paradigm for compassionate release" (Id. at 2) because the "ongoing COVID-19 pandemic presents a clear and present danger" given her age, medical history, and the present conditions at FCI Danbury.  Defendant is sixty-four years old and represents that she suffers from hypertension and hyperthyroidism, and that these conditions put her "at risk for severe disease from COVID-19 which could be life threatening."  (Id. at 13.)

To evidence her condition and the concomitant risks, Defendant has submitted a letter from Dr. Howard J. Eisen, M.D., a professor at the Penn State College of Medicine. (Doc. No. 324-6.) Although Dr. Eisen acknowledges that he never personally examined Defendant, he asserts that he has cared for her family members and is familiar with Defendant's medical history.  (Id. at 2.)  He further states that she suffers from hypertension and hyperthyroidism and that "both of these [conditions] are associated with cardiovascular disease, though to [his] knowledge, [Defendant] does not have active heart disease."  (Id.)  Nevertheless, he submits that it is his medical opinion that "[f]or the sake of [Defendant's] health and survival, she should be released" from prison.  (Id.)

In addition, Defendant contends that she faces an imminent risk of contracting COVID-19 because FCI Danbury has been "hard hit" by the coronavirus. (Doc. No. 324 at 7.) According to Defendant, as of May 4, 2020, 24 inmates and 15 staff members have tested positive for the coronavirus and there has been one death at the facility. (Id.) She further avers that between April 24 and April 26, 2020, two women at the satellite prison at FCI Danbury where Defendant is incarcerated were hospitalized due to severe COVID-19 symptoms and that "upon information and belief" at least ten other women tested positive for the coronavirus. (Id. at 7-8.) Defendant claims her living conditions make it impossible to effectively practice social distancing. (See id. at 8-9.)

Defendant also asserts she is a good candidate for compassionate release because she poses no risk to the community. She cites the fact that the BOP classified her recidivism risk as "minimum," the lowest possible level. (Id. at 9.) She further proffers that she has been a model inmate at FCI Danbury because she has never been cited for disciplinary infractions and because she has engaged in various certificate programs and volunteer activities at the institution. (Id. at 10.)

On June 8, 2020, the Government filed a Response. (Doc. No 327.) The Government argues that Defendant's Motion should be denied on jurisdictional grounds or, alternatively, on the merits. First, the Government contends that the Court does not have jurisdiction to entertain the Motion because Defendant has appealed her conviction to the Third Circuit Court of Appeals. (Id. at 1.) Since Defendant's sentence is a result of her conviction, the Government claims that any modification to her sentence "is clearly now within the exclusive purview of the Third Circuit[.]" (Id.) Second, the Government contends that Defendant's Motion fails on the merits because she has not presented an extraordinary and compelling reason to justify release. (Id. at 2.)

The Government dismisses Dr. Eisen's letter, noting that he never treated Defendant personally and asserts that he incorrectly claimed that she has hypertension and hyperthyroidism. According to the Government, the BOP's medical records show that Defendant suffers instead from hypothyroidism, which is a mild condition that "can result in constipation and is treated with medication." (Id. at 4-5.)  In any event, the Government stresses that neither hypertension, hyperthyroidism, nor hypothyroidism are classified as a risk factor for COVID-19 by the Center for Disease Control ("CDC").[2]  (Id. at 5.)

The Government also disagrees with Defendant's description of the COVID-19 outbreak at FCI Danbury. (Id. at 10.)  Apparently, the outbreak was at the large, low-level security men's facility, and not at the women's facility where Defendant is incarcerated. (Id.)  No inmates at the women's facility have tested positive for COVID-19. (Id.)  In addition, the Government notes that the BOP has instituted a number of measures to minimize the risk to defendants of contracting the virus within FCI Danbury. These measures include (1) screening of all new inmates for COVID-19 symptoms; (2) restricting access to BOP facilities to only those performing essential services; (3) establishing quarantine areas within BOP facilities for infected detainees; (4) suspending social visits to BOP facilities; (5) suspending non-essential legal visits; and (6) modifying BOP operations to maximize social distancing. (Id. at 7-9.)

### III. DISCUSSION

#### A. The Court Lacks Jurisdiction Over Defendant's Motion

As a threshold matter, the Court must determine whether it may entertain Defendant's Motion at the present time. "As a general rule the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." Cochran v. Birkel, 651 F.2d

---

[2] Neither Defendant nor the Government submitted any medical records of Defendant for the Court to review in conjunction with the Motion for Compassionate Release.

1219, 1221 (6th Cir. 1981); see Taylor v. KeyCorp, 680 F.3d 609, 616 (6th Cir. 2012) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (quotation marks and citation omitted).  In the instant case, the Government argues that the pendency of Defendant's appeal divests this Court of jurisdiction over her Motion for compassionate release because "her appeal contends that her conviction should be reversed [and] [a]ccordingly, her conviction (and therefore her entire sentence) is clearly now within the purview of the Third Circuit Court of Appeals."  (Doc. No. 327 at 1.)  Defendant contends to the contrary that the appeal does not divest this Court of jurisdiction because her "appeal did not concern the length of her sentence," which is the issue before this Court.  (Doc. No. 328 at 2.)

A review of the filings makes clear that this Court does not have jurisdiction over Defendant's Motion because whether her sentence should be modified is at issue in both actions.  (See Doc. No. 239) ("Defendant Renee Tartaglione hereby appeals to the United States Court of Appeals for the Third Circuit . . . the Judgment of conviction and sentence entered on July 17, 2018[.]")  As a result, this Court should not take any action that could "alter the status of the case as it rests before the Court of Appeals."  Dayton Indep. School Dist. v. U.S. Mineral Prods. Co., 906 F.2d 1059, 1063 (5th Cir. 1990).

Federal Rule of Criminal Procedure 37(a) (titled "Indicative Ruling on a Motion for Relief That Is Barred by a Pending Appeal") provides, however, that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).  Due to the implied urgency of Defendant's

Motion, the Court will reach the merits and provide an indicative ruling under Rule 37(a). For the reasons set forth below, Defendant's Motion would be denied if the Third Circuit were to remand the case to this Court for consideration of the Motion.

### B. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But there are "a few narrow exceptions" to this general "rule of finality," Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). As amended by the recently-enacted First Step Act, it empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted her administrative remedies.[3] 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[3] A defendant may file a motion for compassionate release directly with a district court after she "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the Court, she "must at least ask the Bureau of Prisons (BOP) to do so on [her] behalf and give [the] BOP thirty days to respond" Raia, 954 F.3d at 955, and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See 18 U.S.C. § 3582(c)(1)(A)). Here, Defendant has met the exhaustion requirement because she filed her request with the Warden of FCI Danbury on March 26, 2020 and waited more than thirty days before filing the instant Motion on May 19, 2020.

18 U.S.C. § 3582(c)(1)(A). Congress has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Application Note 1 to § 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. U.S.S.G. § 1B1.13 app. note 1(A)–(C). This Note states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—

> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D).[4]

The Application Notes only provide "helpful guidance," United States v. Rodriguez, No. 03-271, 2020 U.S. Dist. LEXIS 58718, at *17 (E.D. Pa. Apr. 1, 2020), and are "not ultimately

---

[4] Although by its express language § 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act's enactment modified this requirement. See generally, United States v. Rodriguez, No. 03-271, 2020 U.S. Dist. LEXIS 58718, at *17 (E.D. Pa. Apr. 1, 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

conclusive[,]" id. Though the Sentencing Commission has not yet amended § 1B1.13 or its Commentary to this section to account for the First Step Act, a district court still has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See id.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, No. 12-225, 2020 U.S. Dist. LEXIS 93935, at *18 (W.D.Pa May 29, 2020) (internal quotation omitted). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify … release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 2020 U.S. Dist. LEXIS 93935, at *18. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at *20.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the Section 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of the modification. See id. at *2 (explaining that "the Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C.

§ 3553(a)."). Section 3553(a) lists factors for a court to consider in initially imposing a sentence, so not every factor applies to motions for compassionate release. The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> b. to afford adequate deterrence to criminal conduct;
>>
>> c. to protect the public from further crimes of the defendant; and
>>
>> d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1)-(2), (6). If a balancing of a defendant's extraordinary and compelling reasons and the Section 3553(a) factors support a reduced sentence, the court may reduce the prison term, modify the terms of supervised release, or both.

### C. Defendant's Motion for Compassionate Release Would Be Denied if the Third Circuit Remanded the Case to this Court.

Defendant's Motion would be denied because she has not shown an extraordinary and compelling reason for her release. Further, even if Defendant's professed medical condition and risk of contracting COVID-19 in prison constituted an extraordinary and compelling reason for release, the Section 3553(a) factors would counsel against a reduction or modification of her sentence. These findings will be discussed in turn below.

First, Defendant has not shown an extraordinary or compelling reason to justify compassionate release. While she asserts that her age and alleged medical conditions—hypertension and hyperthyroidism—present a particularized vulnerability to COVID-19, she offers no credible medical evidence that she suffers from these conditions. Moreover, even if she does suffer from these conditions, they are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19.

Defendant has not provided any credible medical evidence that she suffers from hypertension or hyperthyroidism. The only document she filed to evidence her medical conditions is the letter from Dr. Howard J. Eisen. (Doc. No. 324-6.) Dr. Eisen, however, never personally examined Defendant, and thus it is unclear how he could reasonably diagnose Defendant with these conditions without examining her. In addition, Dr. Eisen's own findings undercut his conclusion that Defendant's alleged conditions present a heightened risk of severe forms of COVID-19. While he states that "[c]ardiovascular disease puts patients with COVID-19 at heightened risk of bad outcomes," and avers that Defendant has hypertension and hyperthyroidism, which is associated with heart disease, he concedes that "to [his] knowledge, [Defendant] does not have active heart disease." (Id. at 2.)

Moreover, even if this Court accepts Defendant's proffer that she suffers from hypertension and hyperthyroidism, her alleged medical conditions do not present the kind of particularized vulnerability to COVID-19 needed to justify compassionate release. Neither of her alleged medical conditions—hypertension and hyperthyroidism—are believed to present a higher risk of COVID-19 complications. See United States v. Numann, No. 16-CV-25, 2020 U.S. Dist. LEXIS 72285, at *3, 9 (D. Alaska Apr. 24, 2020) (denying a defendant's motion for compassionate release because defendant's medical conditions, including "epilepsy, hyperthyroidism, and a history of

smoking" did not present an extraordinary and compelling reason); United States v. Falci, No. 17-228, 2020 U.S. Dist. LEXIS 108498, at *12-14 (D.N.J. June 22, 2020) (denying a motion for compassionate release where the defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor."). Section 1B1.13 of the Sentencing Guidelines also supports her continued incarceration because there is no showing that either condition substantially diminishes Defendant's ability to provide self-care within FCI Danbury.

Defendant's argument that her age presents an extraordinary and compelling reason for release is also unpersuasive. Although the Application Notes states that reaching sixty-five years of age has bearing on the compassionate release decision, age alone in the absence of related medical conditions would not warrant compassionate release. Defendant, at age sixty-four, is essentially in the age group covered by the Application Notes, but her reported medical conditions do not rise to the level of warranting compassionate release.

In addition, Defendant has not shown an actual, non-speculative risk of exposure to COVID-19 at the women's facility at FCI Danbury. Although inmates and FCI Danbury's main facility have contracted COVID-19, there is no showing that COVID-19 is present in the satellite camp where Defendant is incarcerated. As a result, Defendant's risk of contracting COVID-19 is entirely speculative. For this additional reason, she has not shown an extraordinary and compelling circumstance warranting compassionate release.

Second, the 3553(a) sentencing factors counsel against granting Defendant compassionate release. Her crimes are significant. Defendant leveraged her position as President of the Juniata Community Mental Health Clinic to enrich herself at the expense of the Clinic's clients, whose services were supported by public funds. In total, she stole more than two million dollars. The

seriousness of the offense is reflected in the sentence this Court imposed, which included 82 months incarceration, three years supervised release, and to pay restitution of $2,338,691[5] and a special assessment of $5,300.  To release Defendant after she has served less than two years of a nearly seven-year sentence would not achieve the purposes of sentencing because it would not reflect the seriousness of the offenses, promote respect for the law, nor provide just punishment for her conduct.  Moreover, this Court already afforded Defendant a downward departure at sentencing from the guideline imprisonment range of 87-108 months.  These guidelines exist to avoid unwarranted sentence disparities among similarly situated defendants.  To further reduce her sentence would not serve the interest of ensuring consistent punishment for similar offenses.  Finally, Defendant is a person with considerable business skills and not in need of educational and vocational training and is apparently receiving appropriate medical care at FCI Danbury.[6]  As a result, the Section 3553(a) factors do not support a sentence reduction.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release will be denied. An appropriate Order follows.

---

[5]   As noted supra, on appeal, the Third Circuit Court of Appeals reduced the restitution by $6,113.  United States v. Tartaglione, Nos. 18-2638 & 18-3017, 2020 U.S. App. LEXIS 18058 (3d Cir. June 9, 2020).

[6]   The Court also has considered the balance of the Section 3553(a) factors and they do not favor Defendant's release from imprisonment.