# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **CRIMINAL NO. 15-491 JHS** |
| **v.** ) | |
| ) | |
| **RENEE TARTAGLIONE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT RENEE TARTAGLIONE'S MOTION
## TO FORFEIT $1,040,900 PRESENTLY HELD BY CLERK OF COURT

Defendant Renee Tartaglione through counsel respectfully requests the Court to forfeit $1,040,000 of proceeds from the sale of a property located on 5th Street in Philadelphia, as the Court originally ordered in its Preliminary Order of Forfeiture dated April 11, 2018.  These funds presently sit in an account at the Clerk's Office.  For the reasons set forth in the attached Memorandum of Law, the Constitution and applicable statutes and regulations require forfeiture of this property as opposed to the payment of these monies to satisfy the Defendant's restitution obligation.  The Government's contractual obligations to the Defendant also require this result.

The requested relief will not affect the Amended Judgment in this case.  The forfeiture and restitution ordered will remain the same.  The requested relief will only impact the method by which funds are directed to the Pennsylvania Attorney General's Office for use to help needy Philadelphians.

Finally, forfeiture of the $1,040,900 is not only required by law, it is fair.  The Government previously waived its right to these monies.  The Government should facilitate the

prompt remission of the funds in full to victims through the DOJ's forfeiture remission process.

WHEREFORE, defendant Renee Tartaglione respectfully requests that the Court amend its April 11, 2018, Order to revert to its original language, which forfeited all of the proceeds from the sale of the 5th Street property originally held in the U.S. Marshal asset seizure account.

Dated:  June 21, 2021                                        Respectfully submitted,


                                                            /s/ Christopher R. Hall
                                                            Christopher R. Hall
                                                            Saul Ewing Arnstein & Lehr
                                                            1500 Market Street, 38th Floor
                                                            Centre Square West
                                                            Philadelphia, PA 19102
                                                            Telephone: (215) 972-7180
                                                            Email: chris.hall@saul.com

                                                            Attorney for Defendant Renee Tartaglione

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **CRIMINAL NO. 15-491 JHS** |
| **v.** ) | |
| ) | |
| **RENEE TARTAGLIONE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT RENEE TARTAGLIONE'S MOTION**
**TO FORFEIT $1,040,900 PRESENTLY HELD BY CLERK OF COURT**

## I.     INTRODUCTION

By Order dated April 11, 2018, the Court entered a forfeiture money judgment in favor of the Government in the amount of $2,401,850.  To partially satisfy this judgment, the Court initially forfeited $2,000,000 in proceeds from the sale of a property located on 5th Street in Philadelphia.  The Court subsequently reversed part of its order on the advice of the Government, directing $1,040,900 of the $2,000,000 to be paid instead as restitution to the Pennsylvania Attorney General.  The Court made this change for the laudable purpose of promptly directing funds to Philadelphians in need.  For the reasons set forth below, the Government incorrectly advised the Court on its ability to convert forfeited funds to restitution. The Constitution and applicable statutes and regulations require forfeiture of this property, as do the Government's contractual obligations to the Defendant.

There is time to correct the Government's error while still achieving the Court's laudable goal.  The funds presently sit in an account at the Clerk of Court's Office.  The Defendant has

exhausted her direct appeal of the judgment – the Court's Amended Judgment Order is final. The Government can now promptly direct forfeited funds to the Pennsylvania Attorney General through the lawful means of remission to victims.

To that end, the Defendant respectfully requests that the Court forfeit the $1,040,000.  It could do this by amending its April 11, 2018, Order to revert to its original language, which forfeited the full $2,000,000 from the sale of the 5th Street property.  This will not affect the Amended Judgment in the case.  The forfeiture and restitution ordered to be paid by the Defendant will remain the same.  It will only impact the execution of the forfeiture and restitution orders, and the mechanism by which funds are directed to the victims.  Forfeiture of the $1,040,900 and an award of those funds to the Pennsylvania Attorney General's Office through the DOJ remission process is not only required by law, it is fair.  The Government previously contracted with the Defendant to dispose of the funds in this way, and waived its claim to these monies.  The Government should facilitate the prompt remission of the funds in full to victims now.

## II.    PROCEDURAL HISTORY

### A.    Indictment and Forfeiture Notice

On January 26, 2016, a grand jury returned a Superseding Indictment against defendant Renee Tartaglione alleging she had charged excessive rent to the Juniata Community Mental Health Clinic ("the Juniata Health Clinic") and had caused the Clinic to issue other unjustified payments to her (Dkt. 3).  The Superseding Indictment included a Notice of Forfeiture.

On February 22, 2016, the Government filed a Bill of Particulars (Dkt. 13) that identified two properties from which the Clinic had operated as subject to forfeiture, including 2637-2645 North 5th Street, Philadelphia, PA ("the 5th Street Property").

**B.      The Preliminary Order of Forfeiture**

On June 23, 2017, a jury convicted Ms. Tartaglione on all counts, triggering forfeiture

proceedings pursuant to federal law and rules of criminal procedure.

On June 29th, the parties agreed the 5th Street Property could be sold for $3 million, with

net proceeds of $2,164,033.  Government's Motion for Preliminary Order of Forfeiture ("Motion

for POF") Dkt. 177-4.  The government and Ms. Tartaglione agreed to place $2 million of the net

proceeds into an escrow account as a substitute for the building itself pending the forfeiture

proceedings. Dkt. 177 at p. 18.   An "Agreement for Interlocutory Sale of Property" governed the

disposition of the proceeds.  Paragraph 8.a. of the Agreement provided in pertinent part:

> The Government and the defendant agree to the sale of the 5th Street Property pursuant
> to the following conditions:
>
> i.  The amount of $2,000,000.00 from the proceeds from the sale of the 5th Street
> Property shall be paid to the "United States Marshals Service" and will be held by
> the United States Marshal Service in its Seized Assets Deposit Account.
>
> ii.  The $2,000,000.00 of proceeds from the sale of the 5th Street Properly paid to
> the United States Marshal Service shall become a substitute res subject to
> forfeiture in place of the 5th Street Property. The $2,000,000.00 shall be held in an
> account maintained by the United States Marshals Service pending the conclusion
> of the forfeiture action.

Dkt. 177-4.

The Government then sought a forfeiture money judgment of $2,561,250 and pursued

both direct proceeds from the crimes and substitute assets.  Dkt. 177 at pp. 1, 3, 17, 21-22, 25.

For the substitute assets, the government pursued "the funds from the sale of the 5th Street

Building that remain in the escrow account after the directly traceable proceeds are paid out."

Dkt. 177 at p. 25.  The government affirmatively asserted that the forfeiture of both proceeds and

substitute assets was mandatory.  Supplemental Memorandum Regarding Loss and Forfeiture,

Dkt. 206 at 7, 18, 22.  The Government asserted the Court had no discretion, including with

3

regard to substitute assets: "[t]he forfeiture statutes make clear that if assets traceable to the full amount of criminal proceeds are unavailable, and the government can show that this is a result of the defendant's actions, the court '*shall order*' the forfeiture of substitute assets." Id. at 22 (quoting 21 U.S.C. §853(p); emphasis added by Government).

The Court held hearings on the Government's Motion for POF on January 18 and 19, 2018. The Court granted the Government's Forfeiture Motion in part and denied it in part by Order entered April 11, 2018. The Court found (1) the government was entitled to a total money judgment of $2,401,850; (2) of this amount, only $959,100 could be traced to the 5th Street Property; and (3) this left a balance of $1,442,750 to be recovered from substitute assets if the Government proved the predicate requirements for that punishment. Court's Opinion dated April 11, 2018, at pp. 8-9, 58-61, Dkt. 215. The Court then found that the Government had proven the statutory requirements for the forfeiture of substitute assets because the Defendant had commingled proceeds with other funds that could not be divided without difficulty. *Id*. at 60. As a result, the Government was also entitled to forfeit (a) the remaining proceeds from the sale of the 5th Street Property and (b) Defendant's remaining real estate holdings to recover up to the balance due on the money judgment. *Id*. at 58-61. The Court specifically noted that the Government sought to satisfy the $1,442,750 balance with the funds that remained in escrow from the sale of the 5th Street Property. Dkt. 215 at 59.

The 5th Street escrow had had an opening balance of $2,000,000. After subtracting $959,100 to satisfy the Court's order of forfeiture of direct proceeds, a balance of $1,040,900 remained (the "5th Street Escrow Balance"). The Court ruled that the 5th Street Escrow Balance "be applied to the outstanding money judgement as substitute assets" pursuant to 21 U.S.C.

4

§853(p)(2). Dkt. 215 at p. 61. The Court also ruled that the Government was entitled to satisfy the remaining $401,850 on the money judgment with the Defendant's other substitute assets. *Id*.

The Court's Judgement and Preliminary Order of Forfeiture that followed tracked the Court's Opinion. Dkt. 216. The Court ordered the Defendant's right, title and interest in the 5th Street Property Escrow Balance "forfeited to the United States." *Id*. at ¶¶10(A), 11, 12. The forfeiture order took effect immediately: "Upon entry of this Order, the United States is authorized to seize the balance of the escrowed funds, plus interest, from the sale of the 5th Street Building, as identified in paragraph 10(A)." *Id*. at ¶12.

### C. The Court's Concern that its Forfeiture Order Would Divert Available Funds from Victims

Toward the end of the Defendant's sentencing hearing on June 27, 2018, the Court found that restitution was due in the amount of $2,076,124 separate and apart from the forfeiture money judgement (understanding that the remedy of restitution and the punishment of forfeiture largely overlap and duplicate one another). Tr. at 92-93. The Court then Ordered this amount paid to the Pennsylvania Attorney General in trust for a successor nonprofit organization to the Juniata Health Clinic.

But the Court doubted the Defendant would have sufficient assets to pay both restitution and forfeiture. *Id*. And the Court noted the Defendant "may not own some of these properties [which the Government had noticed for forfeiture], that some of these properties may be held in joint names with her husband as tenants by the entireties." *Tr*. at pp. 93. The Court expressed concern that victims would suffer from the absence of sufficient assets to satisfy both financial obligations. *Id*.

The Court noted that the Government had represented in the Presentence Investigation Report that the forfeiture money judgment would be used to help the people of Philadelphia. Tr.

at 102.  The Court pressed the Government for specifics on how that would happen and for a response to the possibility that the Pennsylvania Attorney General would "never see any money." Tr. at p. 93.  The Court postponed imposition of sentence to resolve these questions and directed the assigned Assistant U.S. Attorney to confer with her superiors on how to solve the "dilemma" of Government forfeiture of substantially all of the Defendant's assets, which would render the Court's restitution order "paper only."   Tr. at 94.

The U.S. Attorney's Office replied that the Government had a rightful claim to the criminally derived proceeds and substitute assets because it had undertaken the effort to seize properties at the time of indictment.  Tr. at 95-96.  Restitution was a "separate question," the Government cautioned.  In instances where there were insufficient funds to restore victims, there was an administrative process by which the Department of Justice could "reroute forfeiture money" to make victims whole.  Tr. at 96.  The Assistant U.S. Attorney assured the Court the Government was "cognizant of our ability" to provide proceeds from forfeited property to victims, and promised the Court it would.  *Tr.* at 97.  "[T]here are tools available to us in the forfeiture process for that, which we will be undertaking."  *Id.*

This pleased the Court.  The Court "want[ed] to recommend that the Government see that forfeiture money [go] towards payment to the Pennsylvania Attorney General."  *Tr.* at 98.  The Court then continued the sentencing to a new date to permit the Government to provide "detailed information" on how it proposed to use "the forfeiture money," how the process would work, and how long the process would take.  *Tr.* at 101.

The Government then sought to manage the Court's expectations on the time frame.  The Assistant U.S. Attorney advised the Court that the administrative process by which the Government shared forfeiture monies with victims was "yet down the road."  The Court,

however, encouraged the Government to focus on the big picture: "there's $2 million sitting in the Clerk's office in the account." *Tr.* at 103. The Court wanted to see whether the Government could "expedite the process." *Id.* The Court suggested the Government consider whether there was a way to "cut through it" and not "keep the money tied up for a period of time." *Tr.* at 104. The Court did not want the Pennsylvania Attorney General to have to go through a process "that's going to take year after year after year." *Tr.* at 108.

### D.   Government's Supplemental Sentencing Memorandum and Proposed Order

The Government filed a Supplemental Sentencing Memorandum on July 9, 2018 to explain how the Government normally redirects forfeited assets to victims, and why that process normally takes longer than the Court thought appropriate under the circumstances. The Government also proposed a faster "route" – to which the Government was willing to agree – if the Court took certain steps. Government's Supplemental Sentencing Memorandum at 11, Dkt. 233. The Government assured the Court that it had had "extensive discussions" with "forfeiture specialists both at the U.S. Attorney's Office and Department of Justice" to formulate a faster option. *Id.* at 2.

Internal DOJ procedures governed the normal process by which DOJ redirected assets to victims, the Government explained. Usually, the Government would not begin that process until all appeals were exhausted and other requirements were met. *Id.* at 10-11.

Before offering a work-around, the Government made clear that the Executive Branch – and not the Judiciary – had the power to decide whether to use forfeited money to restore victims. Dkt. 233 at 6-7. The Government also made clear it had a right to seek forfeiture in addition to restitution without providing for victims, even though these rights and remedies doubled the payment defendants were required to make and threatened to make restitution a hollow promise. *Id.* at 8-9. The Government then offered – because of the "unique

7

circumstances of this case" – to take an "avenue" to get money into the hands of the State Attorney General's Office as soon as possible. *Id*. 233 at 11.

      The Government offered to "forgo the forfeiture of the $1,040,900 in liquid substitute assets" held in the 5th Street escrow account "so that that sum could be paid promptly to the defendant's victims as restitution." *Id*. at 3. But the Government would do this only if the Court first found the defendant was the alter ego of Norris Hancock LLC (which held title to the 5th Street Building), a fact the Government asserted had been "proved unequivocally" at trial. *Id*. at p. 12. This, the Government claimed, would permit the Court to Order the U.S. Marshal to transfer the $1,040,900 from their Seized Asset Deposit Fund to the Clerk of the Court for payment as restitution to the Pennsylvania Attorney General. *Id*. at 3, 12-13.

      In setting these conditions for releasing its claim to the $1,040,900, the Government admitted that it was for all practical purposes giving up its opportunity to forfeit substitute assets in this amount. The Government conceded it expected a "very large" shortfall in assets to satisfy the forfeiture money judgment. *Id*. at p. 13, n.16.

      The Government provided the Court with a proposed order to execute this work-around, styled "Order for Restitution and Amended Preliminary Order of Forfeiture." Dkt. 234. The proposed order represented that (1) the Court had identified the balance of $1,040,900 in the 5th Street Escrow as a substitute asset "available to the government in forfeiture," (2) the Government could lawfully "withdraw its request for forfeiture of the $1,040,900 as a substitute assets," and (3) the Court could apply those funds to restitution. *Id.* at ¶¶12, 13. As we shall see below, the Government mischaracterized the nature of the escrow balance and incorrectly advised the Court that the Executive Branch could lawfully withdraw its forfeiture claim to the proceeds.

### E.      Second Sentencing Hearing

On July 12, 2018, the Court reconvened the sentencing hearing and ordered the defendant remanded to the custody of the Bureau of Prisons for a term of 82 months imprisonment followed by three years supervised release.  A special assessment of $5,300 was also due, payable immediately.  Transcript of July 12, 2018 Sentencing Hearing at 86.  The Court also ordered the Defendant to pay $2,338,691 in restitution, and directed her to make payments payable to the Clerk at the District Court for distribution to victims.  The Court also directed the Clerk to remit most of any restitution payments received – up to $2,076,124 – to the Pennsylvania Attorney General's Office in trust for a successor nonprofit charitable organization to the Clinic.  Tr. at 88-89.

The Court addressed the interplay between restitution and forfeiture at the beginning of the hearing.  The Court noted the Government had "come up with a legal mechanism" to expedite a good portion of the "forfeiture dollars" to "a noble purpose," that is "to the Pennsylvania Attorney General for distribution to appropriate similarly situated non-profits."  Tr. at 15.

The Court returned to this issue toward the end of the hearing at the time it imposed sentence.  It noted the Government had recommended a way to "handle the restitution or the forfeiture money" and had proposed an order for restitution and an amended preliminary order of forfeiture which the Court would sign and make part of the record.  Tr. at 84.  The Court then signed the Order for Restitution and Amended Preliminary Order of Forfeiture as drafted by the Government.  Dkt 236.

### F.      The Judgment and Conviction Order

The Court entered its Judgement on July 17, 2018.  The Court sentenced defendant Tartaglione to 82 months imprisonment and three years' supervised release.  Dkt. 243, Amended

Judgment at pp. 3, 4.  The Judgement also imposed Criminal Monetary Penalties: an assessment of $5,300 and restitution in the amount of $2,339,691.  Amended Judgment at p. 7.  The restitution was payable to two entities: $2,076,124 to the Pennsylvania Attorney General's Office and $263,567 to the IRS (later corrected on July 25, 2018 to $263,567).  *Id*.

A Schedule of Payments appeared on page 8.  The Court ordered the Defendant to pay a lump sum assessment of $5,300 "immediately," with the "balance due" in equal monthly installments of $2,000 over a period of 36 months to commence 30 days after the Defendant's "release from imprisonment to a term of supervision."  An additional special instruction required "[a]n initial payment of $25,000" due on or before August 13, 2018.  The Judgment included the forfeiture amount, providing that the defendant "shall forfeit" to the United States "$2,401,850." *Id.*

### G.  Defendant's Motion to Vacate, Clarify or Modify Order for Restitution and Amended Preliminary Order of Forfeiture

The Defendant first learned the Government intended not to credit the full amount of the 5th Street escrow to Defendant's forfeiture obligation after she offered – within a week of sentencing – to apply the proceeds from the sale of a property in Ventnor NJ to her forfeiture, special assessment, and restitution obligations.  The Government replied on July 27, 2018 and informed the Defendant that it did not believe the full amount of the 5th Street Escrow applied toward forfeiture.  Dkt. 245-3.  The Defendant filed a Motion to Vacate, Clarify or Modify Order for Restitution and Amended Preliminary Order of Forfeiture on August 6, 2018.  Dkt. 245.  The Government responded on August 9, 2018, asserting the Court lacked jurisdiction to address the Defendant's motion on several grounds, including that Defendant's Notice of Appeal had divested the Court of jurisdiction.  Dkt. 246 at pp. 1-2.  The Court agreed.  By Order entered

August 27, 2018, the Court denied the Motion on the ground that it did not have jurisdiction to modify the sentence.  Dkt. 248, Order entered August 27, 2018 at n.1.

### H.    Defendant's Appeal

Defendant Tartaglione appealed the following five issues: (1) the scope of permitted expert witness testimony at trial, (2) the amount of forfeiture, (3) the amount of restitution payable to the IRS, (4) whether the Clinic's beneficiaries qualified as victims, and (5) whether the Court could order restitution payable to the Pennsylvania Attorney General.  The Court of Appeals affirmed this Court's rulings on the first three issues, and affirmed the restitution award on the ground that any error on the fourth and fifth issues was harmless because succeeding on them would not affect the restitution award to the Pennsylvania Attorney General's Office as Trustee.  *United States v. Tartaglione*, 815 Fed. Appx. 638, 653 (3rd Cir. 2020).  The time for appeal to the United States Supreme Court has passed.  The Amended Judgment is final.

### I.    The Government's Effort to Forfeit Additional Property and Its Affirmation that Insufficient Substitute Assets Existed to Satisfy the Forfeiture Money Judgment

On April 12, 2019, the Government filed a Motion for Preliminary Order of Forfeiture for Substitute Asset and Additional Property Subject of Forfeiture.  By the motion, the Government sought to forfeit real property located at 2117 Palethorp Street in Philadelphia – in addition to other real properties against which the Government had already moved – to satisfy the Defendant's outstanding forfeiture obligation.  Dkt. 284.

The Government then re-affirmed the admission it had made when it proposed a way to work-around the forfeiture remission process to direct the 5th Street Escrow Balance to the Pennsylvania Attorney General via the mechanism of restitution.  The Government advised the Court that the Government needed to forfeit the Palethorp property because the other real

properties the Court had previously ordered forfeited were insufficient to cover the Defendant's forfeiture obligation:

> Given the valuation of those properties, the government expects that a *substantial balance* will remain due and owing on the forfeiture debt even after those properties are finally forfeited, and that that debt will exceed the value of the property (the lot on Palethorp) that is the subject of this order.

Id. at n.3 (emphasis added).  This was a remarkable statement.  When coupled with the Government's Supplemental Sentencing Memorandum, it makes clear the Government knew – at the time it forewent its claim to the liquid 5th Street Escrow Balance – that the Defendant did not have sufficient substitute assets to satisfy her outstanding forfeiture obligation.

The Defendant's husband, Carlos Matos, filed a Petition for Hearing to Adjudicate Validity of His Interest in Real Property on April 25, 2019.  Dkt 291 ("the Matos Petition").  The Matos Petition asserted an interest as an innocent third party in the Palethorp Property and two of the properties identified in the Court's Preliminary Order of Forfeiture dated April 11, 2018. Dkt. 284.

The Government included a proposed order with its Palethorp forfeiture motion.  Dkt. 284.  The Court signed the Preliminary Order of Forfeiture for Substitute Asset and Additional Property Subject to Forfeiture on May 16, 2019.  Dkt. 296.

### J.     The Current Location of the 5th Street Escrow Balance

The substitute asset monies from the sale of the 5th Street Property currently sit in the Clerk's Office.  See Case Inquiry Report No. DPAE215CR000491 dated 3/29/2001 (copy attached as Exhibit A).  The funds are identified as "Victim Restitution" funds "collected" from the defendant.  Exhibit A, p. 2.  The transaction detail shows that two checks from "Renee Targaglione" in the amount of $5,300 and $1,035,600 respectively were received by the Clerk's Office on May 8, 2019.  On information and believe, these two checks came from the U.S.

Marshal and represent the $1,040,900 balance from the 5th Street escrow account.  The Defendant had previously paid her $5,300 special assessment, within a week of sentencing.  It is not apparent why the Clerk allocated $5,300 from the 5th Street Escrow Balance to the Defendant's special assessment.

## III.    ARGUMENT

The Constitution and applicable statutes and regulations, and the Government's contractual obligations to the Defendant, require the Court to forfeit the $1,040,900 the 5th Street Escrow Balance.  The funds presently sit in an account at the Office of the Clerk.  The Court can forfeit these monies by reverting to its original April 11, 2018 Order, which forfeited the full $2,000,000 from the 5th Street Property sale.  This will not affect the Amended Judgment in this case.  The forfeiture and restitution ordered to be paid by the Defendant will remain the same.  It will only impact the manner of execution of the forfeiture and restitution orders, and the mechanism by which funds are directed to the victims.  Forfeiture of the $1,040,900 and an award of those funds to the Pennsylvania Attorney General's Office through the DOJ remission process is not only required by law, it is fair.  The Government agreed by written contract to apply these funds to the Defendant's forfeiture obligation, and previously waived its claim to these monies in favor of victims.  It should facilitate their prompt remission to victims in full now via the DOJ process for the remission of forfeited assets to victims.

### A.    The Court Correctly Determined in its Original Opinion dated April 11, 2018 that the Forfeiture Statutes and Federal Rules of Criminal Procedure Required Forfeiture of the 5th Street Escrow Balance as a Substitute Asset

The forfeiture statutes enacted by Congress require courts to forfeit substitute assets if assets traceable to the full amount of criminal proceeds are unavailable as a result of the defendant's actions.  28 U.S.C. §2461(c); 21 U.S.C. § 853(p)(2).  Here, the Court applied these statutes correctly after conducting hearings on January 18 and 19, 2018.  The Court issued an

13

Opinion on April 11, 2018 in which it found (1) Tartaglione had derived criminal proceeds in the amount of $2,401,850; (2) only $959,100 of this amount was traceable to the 5th Street Building; (3) $1,442,750 in untraceable criminal proceeds remained; (4) $959,100 of the $2,000,000 in the 5th Street escrow was forfeited as traceable criminal proceeds; and (5) the balance of the 5th Street escrow in the amount of $1,040,900 was forfeited as a substitute asset, leaving a balance of $401,850 to be satisfied from any additional substitute assets the government could locate. Opinion at 59 - 61.

The Court noted that 28 U.S.C. §2461(c) and 21 U.S.C. §853(p) required the Court to forfeit "substitute property" when the proceeds of a criminal's conduct could not be located upon the exercise of due diligence.  Court's Opinion at 58.  The Court quoted the mandatory language of §853(p)(2): "the court *shall order* the forfeiture of [available substitute assets]."  *Id*. (emphasis added).  The Court then quoted *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) for the proposition that §853(p) is not discretionary but instead "mandates forfeiture of substitute assets 'when the tainted property has been placed beyond the reach of a forfeiture.'" *Id*. (*quoting Alamoudi*, 452 F.3d at 314).

The Federal Rules of Criminal Procedure make clear the Court correctly ruled it had to apply the balance of the 5th Street escrow to satisfy the Defendant's forfeiture obligation. Fed.R.Crim.P. 32.2(b)(2) provides that courts "must promptly enter a preliminary order of forfeiture" directing the forfeiture of "any substitute property" if the government meets the statutory criteria.  *See United States v. Vampire Nation*, 451 F.3d 189, 202-03 (3rd Cir. 2006). The Court correctly forfeited the $1,040,900 balance in the 5th Street escrow in its April 11, 2018 Preliminary Order of Forfeiture.

B.     The U.S. Attorney's Office Incorrectly Advised the Court to Misdirect the $1,040,900 Away from the Forfeiture Money Judgement.

The U.S. Attorney's Office incorrectly advised the Court that it could reverse the April 11, 2018 Preliminary Order of Forfeiture to address the Court's concern that forfeited cash would languish for years before getting to the Pennsylvania Attorney General. The U.S. Treasury's interest in the property vested no later than April 11, 2018, and the U.S. Attorney's Office lacked the authority at that point to redirect the money to the Pennsylvania Attorney General outside of the remission and mitigation process. The monies have not yet been paid to the Pennsylvania Attorney General, making it easy to correct that error now. This is required by the Constitution, the forfeiture statutes enacted by Congress, and regulations adopted by the Department of Justice.

1.     The U.S. Treasury's Interest in the 5th Street Escrow Balance Vested No Later than the Court's April 11, 2018 Preliminary Order of Forfeiture

The Third Circuit has not yet determined the point at which the Government's interest in substitute assets vests under the forfeiture laws. But other circuits have unanimously agreed that the government's interest vests no later than the entry of a Preliminary Order of Forfeiture. *Compare United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003) (forfeiture of substitute property "relates back to the date of the acts giving rise to the forfeiture") *with United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007) (government's interest in substitute assets vests after conviction and fulfillment of statutory conditions found in §853(p)(1)(A)-(E)).

Here, the Court found that the statutory conditions for the forfeiture of Tartaglione's substitute assets were fulfilled as of April 11, 2018, and directed the forfeiture of the $1,040,900 5th Street Escrow Balance. This substitute asset had already been reduced to cash and sat in a U.S. Marshal seized asset account. An escrow agreement – which the Government and the Defendant had signed – governed the account and called for the application of the monies to any

15

forfeiture judgment.  As of the Court's April 11, 2018 Order, the cash belonged to the United States.

Indeed, the Government's act of proposing a work-around to direct the monies promptly to victims made this point clear.  The United States Attorney's Office advised the Court in its Supplemental Sentencing Memorandum that it would only agree to waive its right to the forfeited monies if the Court made a finding that the Defendant was sole owner of Norris Hancock LLC—the nominal owner of the forfeited proceeds.  If the Court was not prepared to make that finding, the U.S. Attorney's Office advised, then the Government would not agree to permit the monies to be paid to victims via the restitution process.  Dkt. 233 at p.12 n.13.  In sum, the Government controlled the disposition of the 5th Street Escrow Balance at the time of sentencing by dint of the Court's April 11, 2018 Order.

        2.      The Attorney General is Required by Law to Forward Forfeited Money to the U.S. Treasury

Once the Government's interest in forfeited property vests, the Department of Justice must dispose of the property pursuant to law.  Title 21, U.S.C. §881 requires the Attorney General to forward forfeited money to the U.S. Treasury.  It provides in pertinent part:  "[t]he Attorney General shall forward to the Treasurer of the United States for deposit … any … moneys [forfeited under Subchapter I of the Controlled Substances Act]."  21 U.S.C. §881(e)(2)(B).  The Court had proceeded under the forfeiture provisions of Subchapter I of the Controlled Substances Act when it entered the order of forfeiture against Defendant Tartaglione pursuant to 21 U.S.C. §851(p).  The Attorney General was required by law to forward the $1,040,900 in cash representing the balance of the substitute *res* for the 5th Street Property upon entry of the Court's Order dated April 11, 2018.

     3.      The Department of Justice Lacked Discretion to Select Between Various Substitute Assets Potentially Owned by the Defendant Because – as the Government Concedes – Insufficient Additional Substitute Assets Were Available to the Satisfy the Court's Forfeiture Judgment

The Government lacked discretion to treat the $1,040,900 5th Street Escrow Balance as a fungible asset it could exchange for another substitute asset to pay the U.S. Treasury. The government might enjoy some discretion to select among different substitute assets where a defendant holds a surplus of assets and the government acts promptly as to each. But that did not occur here. The Government had filed a bill of particulars as to the 5th Street property. Fed.R.Crim.P. 32.2 required the Court to "promptly" enter a Preliminary Order of Forfeiture, which the Court did on April 11, 2018. The Government knew at the time of sentencing that it would experience a "very large" shortfall on the forfeiture money judgment if it diverted the $1,040,900 to victims through the restitution process. Government's Supplemental Sentencing Memorandum, Dkt. 233, at p. 13, n.16. The Government then confirmed this fact when it moved to forfeit the Palethorp property shortly after the imposition of sentence. It acknowledged that a "substantial balance" will remain due and owing on the defendant's forfeiture debt even if the Court were to order the forfeiture of all Tartaglione's potentially available substitute assets. Government's Motion to Forfeit Palethorp Property at n.3. Under these circumstances, the Government lacked discretion to divert any substitute assets to victims outside the remission and mitigation process.

     4.      Only Congress Can Decide How to Appropriate Monies of the U.S. Treasury

Article 1, section 9, clause 7 of the U.S. Constitution provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." The Clause's words make clear that "[n]o money 'can be paid out of the

Treasury unless it has been appropriated by an act of Congress.'" *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (*quoting OPM v. Richmond*, 496 U.S. 414, 424 (1990)). The Clause "protects Congress's exclusive power over the federal purse," and "prevents Executive Branch officers from even inadvertently obligating the Government to pay money without statutory authority." *Id*. at 1346-47 (internal quotation marks and citations omitted).

Congress established in the United States Treasury a fund known as the Department of Justice Assets Forfeiture Fund (the "Assets Forfeiture Fund"). 28 U.S.C. §524(a), (c)(1). Congress made the Assets Forfeiture Fund available to the Attorney General without fiscal year limitation for specified law enforcement purposes. §524(c)(1). The permitted purposes include remission to victims. §524(c)(1)(E)(i).

The procedures for Justice officials to follow when considering remission or mitigation of judicial forfeitures are set forth at 28 C.F.R., Chapter 9. Victims may petition for remission. 28 CFR §§9.4(b), (e), 9.8(a)(1). Upon receipt of a petition, the investigating agency and the U.S. Attorney's Office make a recommendation to the Chief of the Asset Forfeiture and Money Laundering Section (now MLARS). §9.4(f). The Chief then decides. §9.4(g).

5.    It is Not Too Late to Correct the Government's Error

It is not too late to correct the U.S. Attorney's erroneous diversion of forfeiture proceeds belonging to the U.S. Treasurer. The $1,040,900 from the 5th Street Escrow Balance stills sit in the Clerk's Office. The monies have not yet been disbursed to the Pennsylvania Attorney General. The Court can still achieve the noble goal of providing funds to needy Philadelphians by directing the Clerk to remit the funds to the U.S. Treasury in partial satisfaction of the Court's money judgment Order. The Pennsylvania Attorney General can then apply for remission of the funds as a victim representative, and this petition should be promptly granted by the Department of Justice pursuant to 28 C.F.R. Chapter 9. This is the only lawful way to proceed.

18

This solution to the Government's improvident advice to the Court will not impact the Amended Judgment in the case. The amount of restitution ordered and the Court's forfeiture money judgment order will remain the same. Only the mechanism by which funds are directed to victims will change.

> 6.   The U.S. Attorney's Office Should Support Remission in Full of the $1,040,900 to Victims Because it Previously Waived its Right to This Amount

The U.S. Attorney should support payment in full of the $1,040,900 to victims through the remission and mitigation process provided by 28 C.F.R. Chapter 9. The Government assured the Court it would "*forgo* the forfeiture of $1,040,900 in liquid substitute assets" when it erroneously agreed to "support releasing [the] funds" through the restitution process. Government's Supplemental Sentencing Memorandum at 3 (emphasis added). The Government took this position at a time it knew the Defendant's other potentially available substitute assets could not replace this amount. Having knowingly relinquished its right to liquid substitute assets during the sentencing hearing, the Government should not now withhold any portion of the funds during the forfeiture remission process. The Government should instead honor the position it took before this Court and remit those funds in full to the Pennsylvania Attorney General to help Philadelphians in need.

> **C.   Contract Law, Equity, and Fairness Preclude the Government from Executing on Substitute Assets in the Amount of $1,040,900 if the Court Does Not Forfeit the 5th Street Escrow Balance**

Should the Court decide not to forfeit the 5th Street Escrow Balance, the Court should preclude the Government from executing on $1,040,900 in substitute assets because the U.S. Attorney's Office promised the Defendant it would apply the 5th Street Escrow Balance to the Defendant's forfeiture obligation and waived its right to substitute assets in this amount.

1.      The Government Agreed by Written Contract to Apply the Balance of the
5th Street Escrow to Defendant's Forfeiture Money Judgement

The Government entered into a written agreement with the Defendant about the disposition of the proceeds from the 5th Street Property.  The parties agreed it was in the interest of both to sell the 5th Street Property shortly after the Defendant was convicted.  They placed virtually all of the net proceeds in an escrow account maintained by the United States Marshals pursuant to a written contract signed by the Defendant and the Chief of the Asset Forfeiture Unit within the United States Attorney's Office.  The agreement is styled "Agreement for Interlocutory Sale of Property" (Dkt. 177-4).

The agreement provides that the United States Marshals would hold the $2 million in net proceeds from the sale of the 5th Street Property in its "Seized Assets Deposit Account."  ¶8.a.i. The agreement made the nature of the funds clear.  It provided that the $2 million "shall become a substitute res subject to forfeiture in place of the 5th Street Property."  ¶8.a.ii.  Finally, the agreement limited the disposition of the funds.  The parties agreed the monies would stay in the escrow account "pending the conclusion of the forfeiture action."  Id.

The identification of the funds as "subject to forfeiture" and the commitment to hold the funds pending conclusion of the forfeiture action make clear the parties agreed the funds would be applied against any forfeiture money judgment the Court entered.  The Court should enforce this contract by applying the 5th Street Escrow Balance against the Court's money judgment order to determine the constructive balance owed by the Defendant.  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 583 F. 3d 575, 585-86 (3rd. Cir. 2009) (jury determines any ambiguous terms of contract where parties reduce agreement to writing).

20

2.      The Government Waived it Right to $1,040,900 in Liquid Substitute Assets

In addition to contract law, the principles of equity and fairness preclude the Government from executing on $1,040,900 of the Court's forfeiture money judgment order.  As was noted above, the Government assured the Court it would "*forgo* the forfeiture of $1,040,900 in liquid substitute assets" when it agreed to "support releasing funds" to victims via the restitution process.  Government's Supplemental Sentencing Memorandum at 3 (emphasis added).  The Government waived its right to any potentially available substitute assets in the amount of $1,040,900.  Principles of equity and fairness preclude it from seeking to satisfy that portion of the Court's $2,401,850 money judgment.  *See generally Teva Pharm. Indus. v. AstraZenica Pharms. LP*, 2009 U.S. Dist. Lexis 77885 *13, 2009 WL 2869777 (EDPA 2009) (evidence of waiver may include participation in inconsistent court proceeding or oral agreement later reduced to court order).

**D.      The Balance Remaining On The Court's Forfeiture And Restitution Orders**

The Court entered a forfeiture money judgment of $2,401,850.  Proceeds from the sale of the 5th Street Property in the amount of $2,000,000 were deposited into an asset seizure account maintained by the U.S. Marshals.  Of this, $959,100 were applied to the forfeiture money judgment as direct proceeds of crime.  The balance, $1,040,900, should also have been paid to the U.S. Treasury and then lawfully directed to victims via the forfeiture remission process.  Proper application of the $1,040,900 would leave a balance of $401,850 on the forfeiture money judgment before application of other substitute assets.  This lawful, fair and just result can be achieved either by restoring the Court's April 11, 2018 Preliminary Order of Forfeiture to its original form, or by precluding the Government from executing on $1,040,900 in substitute assets when seeking to enforce the Court's money judgment order.

21

## IV.    CONCLUSION

For the reasons set for above, Defendant Renee Tartaglione respectfully requests that the

Court enter an order of forfeiture against the $1,040,900 that presently sits in the Office of the

Clerk.  In the alternative, the Court could preclude the Government from executing on

$1,040,900 in substitute assets when seeking to enforce the Court's money judgment order.


Dated:  June 21, 2021                          Respectfully submitted,


                                       /s/ Christopher R. Hall
                                Christopher R. Hall
                                Saul Ewing Arnstein & Lehr
                                1500 Market Street, 38th Floor
                                Centre Square West
                                Philadelphia, PA 19102
                                Telephone: (215) 972-7180
                                Email: chris.hall@saul.com

                                Attorney for Defendant Renee Tartaglione

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 18, 2021, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  June 21, 2021

             /s/ Christopher R. Hall   
           Christopher R. Hall